## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD
OF MICHIGAN MUTUAL
INSURANCE COMPANY and                    Case No. 23-11213
BLUE CARE NETWORK OF                     Hon. Jonathan J.C. Grey
MICHIGAN,

           Plaintiffs,

v.

EXPRESS SCRIPTS, INC.,

           Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 24)

## I.    INTRODUCTION

On May 23, 2023, plaintiffs Blue Cross Blue Shield Mutual Insurance Company ("BCBSM") and Blue Care Network of Michigan ("BCN") filed this seven-count lawsuit. (ECF No. 1.) On June 14, 2023, plaintiffs filed an amended complaint. (ECF No. 14.) Defendant Express Scripts, Inc. ("Express Scripts") filed a motion to dismiss plaintiffs' First, Third, Fourth, and Fifth Causes of Action, and the motion has been fully briefed. (*See* ECF Nos. 24, 28, 30.)

The Court concludes that oral arguments would not aid in the disposition of the motion, and it rules on the briefs alone. *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on the briefs without a hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan L.R. 7.1(f)(2) gives discretion to the Court to decide motions without hearings).

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss.

## II.    BACKGROUND

BCBSM provides health insurance and other health plan services to self-funded and fully insured group health plans and fully insured individuals. (ECF No. 14, PageID. 62 at ¶ 13.) BCBSM hires a pharmacy benefit manager ("PBM") to assist with these tasks. (*Id.*) A PBM is a company that administers prescription drug benefits on behalf of a health plan, employer, or other organization. (*Id.* at ¶ 14.) PBMs contract with pharmaceutical manufacturers, health insurers, and pharmacies to

manage the pharmacy benefits to which an insurer's subscribers are entitled. (*Id.*) Express Scripts is a PBM. (*Id.*)

Plaintiffs allege that Express Scripts was BCBSM's PBM under a Pharmacy Benefit Manager Master Agreement with an effective date of January 1, 2019 (the "2019 MSA"). (*Id.* at PageID.63 at ¶ 17.) Under the 2019 MSA, "Express Scripts agreed to pay guaranteed rebates on Brand Name Drugs." (*Id.* at PageID.69 at ¶ 44.) "Brand Name Drugs" were defined as:

> [A]ll single-source brand drugs and multisource brand drugs, excluding Generic Drugs, as set forth in First DataBank's National Drug Data File, or such other nationally recognized source as determined by [Express Scripts] using the [Brand/Generic Algorithm the ("BGA")] and agreed upon by the parties.

(*Id.*) The definition of "Brand Name Drugs" in the 2019 MSA was "substantively identical" to that set forth in a 2017 Amendment (the "2017 Amendment") to the Restated Pharmacy Benefit Manager Master Agreement executed by BCBSM and Medco Health Solutions, Inc. (which was then affiliated with Express Scripts) (the "2015 MSA"). (ECF No. 14, PageID.63 at ¶ 33.)

Plaintiffs allege that, once the 2017 Amendment was executed, Express Scripts paid BCBSM guaranteed rebates for branded medical

3

supplies for the duration of the 2015 MSA. (*Id.* at ¶ 34.) Plaintiffs also allege that, in August 2017, prior to execution of the 2019 MSA, Express Scripts "confirmed in writing to BCBSM that guaranteed rebates would apply to claims for branded medical supplies under the 2019 MSA." (*Id.* at PageID.79 at ¶ 97; *see also id.* at PageID.68 at ¶ 36.)

> The 2019 MSA contains the following merger clause:
>
> 18.24 Entire Agreement. This Agreement, together with the Schedules and Exhibits hereto, embodies the entire understanding of the parties in relation to the subject matter hereof, supersedes any prior agreement among the parties in relation to the subject matter hereof, and no other agreement, understanding, or representation, verbal or otherwise, relative to the subject matter hereof exists among the parties at the time of execution of this Agreement.

(ECF No. 24, PageID.123–124; ECF No. 24-1, PageID.132 at § 18.24).

The 2019 MSA was scheduled to expire at the end of 2021. (*Id.* at PageID.64 at ¶ 21.) In February 2020, BCBSM started soliciting bids for a new PBM contract that would replace the 2019 MSA when the 2019 MSA expired. (*Id.*) Plaintiffs allege that, on July 27, 2020, Express Scripts notified BCBSM that "Express Scripts would stop paying guaranteed rebates to BCBSM for branded medical supplies even though Express Scripts and its predecessor had been guaranteeing these rebates for several years." (*Id.* at ¶ 22.) Express Scripts allegedly "claimed that

4

its payment of those guaranteed rebates was supposedly a mistake." (*Id.* at PageID.65 at ¶ 23.)

Plaintiffs assert that Express Scripts promptly reduced the number of claims subject to guaranteed rebates and ceased remitting to BCBSM guaranteed rebates for branded medical supply claims. (*Id.* at PageID.65–66 at ¶ 25.) More specifically, Plaintiffs allege that, from July 27, 2020 forward, Express Scripts stopped paying BCBSM the guaranteed rebates under the 2019 MSA by "systematically undercount[ing] the number of claims subject to its obligations to pay guaranteed rates." (*Id.* at PageID.63–64 at ¶¶ 19–20.) In doing so, Express Scripts allegedly violated the 2019 MSA and retained for its own use and profit money owed to BCBSM under the terms of the 2019 MSA. (*Id.* at PageID.64 at ¶ 20.)

BCBSM challenged Express Scripts' change in policy, asserting that the parties intended–and Express Scripts had paid–guaranteed rebates for branded medical supplies in the past. (*Id.* at PageID.66 at ¶ 26.) On October 23, 2020, Express Scripts allegedly offered to reinstitute the guaranteed rebates for branded medical supplies if BCBSM renewed the 2019 MSA. (*Id.* at ¶ 27.) BCBSM declined Express Scripts' offer and

executed a new PBM contract with Optum Rx that became effective upon the expiration of the 2019 MSA. (*Id.* at ¶ 28.) Plaintiffs allege that Express Scripts has not paid the guaranteed rebates for branded medical supplies that Express Scripts wrongfully withheld. (*Id.* at ¶ 29.)

Plaintiffs filed this action asserting: (1) three breach of contract claims (the Second, Sixth, and Seventh Causes of Action) that are not challenged in the instant motion; (2) a claim for conversion (First Cause of Action); (3) a claim for fraudulent inducement (Third Cause of Action); (4) a claim for promissory estoppel (Fourth Cause of Action); and (5) a claim for equitable estoppel (Fifth Cause of Action).

## III.   LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

But a court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

When deciding whether to dismiss a case, a court will generally rely only on the facts or claims stated in the complaint. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citations omitted). However, the Court may consider exhibits attached to the complaint, public records, and motion to dismiss attachments without converting the motion into one for summary judgment so long as the outside documents are referred to in the complaint and are central to the claims. *Id.* For this reason, the Court may and will consider the terms of the 2019 MSA when deciding issues raised in the motion to dismiss.

## IV.   ANALYSIS

### A.   Conversion (First Cause of Action)

BCBSM's first cause of action is brought as both a common-law conversion claim and a claim under Michigan's conversion statute, M.C.L. § 600.2919a. Both common-law and statutory conversion claims

are torts. *Aroma Wines & Equip., Inc. v. Columbian Distr. Servs., Inc.*, 497 Mich. 337, 339, 361 (2015).

A breach of a contractual obligation cannot support an action in tort absent the "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 83 (1997); *see also Sherman v. Sea Ray Boats*, 251 Mich. App. 41, 52 (2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established"); *Brewster v. Martin Marietta Alum. Sales, Inc.*, 145 Mich. App. 641, 666-67 (1985) (when a plaintiff's cause of action arises from a breach of contractual obligation, the appropriate claim lies in contract, not in tort, because "[a] relationship did not exist . . . which would give rise to a legal duty without the enforcement of the contract promise itself").

Plaintiffs argue that the guaranteed rebates for branded medical supplies constituted "money payable to BCBSM." Plaintiffs contend that Express Scripts misappropriated the "money payable to BCBSM" when Express Scripts did not pay that money to BCBSM, then converted that

money to its own use when subsequently representing it would pay the money to BCBSM "only if BCBSM agreed to a renewed PBM agreement with Express Scripts." (ECF No. 14, PageID.75 at ¶ 75.)

Plaintiffs assert that because those amounts were "specifically earmarked" for BCBSM, there was first a breach of contract and then, "*in conduct separate and apart from any breach,*" a conversion when Express Scripts sought to leverage the payment of guaranteed rebates in exchange for being awarded the new PBM agreement. (ECF No. 28, PageID.164 (emphasis in original).)

The Court finds that Michigan law does not support plaintiffs' theory. The "money payable to BCBSM" that Express Scripts allegedly withheld was the guaranteed rebates awarded to Express Scripts. (*See* ECF No. 14, PageID.62–63 at ¶ 15 ("A core function of a PBM is to contract with pharmaceutical manufacturers for their products. Pharmaceutical manufacturers often offer rebates to PBMs in exchange for the prospect of improved sales of their products.").)

As plaintiffs allege, pursuant to the terms of the 2019 MSA, only after the guaranteed rebates are paid to Express Scripts (a PBM) does an obligation arise for Express Scripts (the PBM) to pass on those rebates to

BCBSM. (*Id.* ("Because PBMs can achieve higher rebates if their health plan customers place products on their formularies, PBMs will typically pass on a portion of those rebates to the health plans."); *Id.* at PageID.63 at ¶ 17 ("Express Scripts agreed under the 2019 MSA to pay BCBSM guaranteed minimum rebates for branded products . . .").)

Accordingly, the underlying agreement (the 2019 MSA) did not entitle BCBSM to any guaranteed rebate payments until after Express Scripts received the rebates from the pharmaceutical manufacturers. *See Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 649 (W.D. Mich. 2022) ("the Employment Agreement did not entitle Hudak to any commission 'until [Acrisure] receives payment of such commission from the insurance or product vendor.'").

Significantly, BCBSM does not allege that it was the owner of the money initially paid to Express Scripts by the pharmaceutical manufacturers. Nor does BCBSM allege that Express Scripts' "initial exercise of domain over the [guaranteed rebates] was . . . wrongful" or that Express Scripts obtained guaranteed rebate amounts for branded medical supplies without consent of the pharmaceutical manufacturers. *Acrisure,* 618 F. Supp. 3d at 649.

It is well-established Michigan law that a plaintiff fails to state a claim for conversion when it fails to allege that the defendant's "initial exercise of domain over the property was in fact wrongful." *Lawsuit Financial, L.L.C. v. Curry*, 261 Mich. App. 579, 591–592 (2004). Therefore, the only avenue by which BCBSM may be entitled to the "money payable to BCBSM" is based on Express Scripts' alleged contractual obligations pursuant to the 2019 MSA. However, a "conversion claim cannot be brought where the property right alleged to have been converted arises entirely from the plaintiff's contractual rights." *Acrisure*, 618 F. Supp. 3d at 650. *See also Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014) (citation omitted) (dismissing the plaintiffs' common law and statutory conversion claims pursuant to Rule 12(b)(6) because they were not "separate and distinct" from their breach of contract claims). As in *Llewellyn*, were it not for the 2019 MSA, Express Scripts "would have had no legal obligation to" pay any guaranteed rebates at all, including, allegedly, rebates for branded medical supplies. *Id.* at 789.

For the reasons stated above, the Court finds that plaintiffs have failed to state a claim for conversion that is separate and distinct from

their breach of contract claims. Accordingly, the Court **DISMISSES** plaintiffs' First Cause of Action.

### B.    Fraudulent inducement (Third Cause of Action)

Fraudulent inducement requires that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*See, e.g., Custom Data Sols., Inc. v. Preferred Cap., Inc.*, 274 Mich. App. 239, 243 (2006) (quotations omitted).

The Court finds that plaintiffs have sufficiently alleged a claim for fraudulent inducement. Plaintiffs allege that, in August 2017, BCBSM asked Express Scripts to confirm that guaranteed rebates would apply to claims for branded medical supplies in the 2019 MSA, and Express Scripts "confirmed in writing to BCBSM that guaranteed rebates would apply to claims for branded medical supplies under the 2019 MSA." (ECF No. 14, at PageID.79 at ¶ 97; *see also id.* PageID.68 at ¶ 36 (emphasis added) ("Minimum Rebate Guarantees will . . . include all brand claims inclusive of OTC products **and supplies** with a brand classification.");

12

*see also id.* at PageID.67–68 at ¶¶ 35–36, 38 (BCBSM expressly asked Express Scripts to confirm, and Express Scripts represented, that Express Scripts would pay guaranteed rebates on branded medical supplies, a representation that was material to BCBSM).)

Plaintiffs claim that when Express Scripts made the representation, it knew or recklessly disregarded that it would not pay the guaranteed rebates for branded medical supplies. (*Id.* at PageID.68–69 at ¶¶ 37, 41; PageID.79 at ¶ 98.) Plaintiffs also assert that Express Scripts' "affirmative representation to BCBSM that 'brand claims' would be 'inclusive of . . . supplies with a brand classification' was a material inducement to BCBSM to enter the 2019 MSA." (*Id.* at ¶ 40.) Plaintiffs state that Express Scripts intended that BCBSM rely on the representation, and BCBSM did rely on that representation, for purposes of negotiating and entering the 2019 MSA. (*Id.* at PageID.68–69 at ¶¶ 38–39, 41, 43.) Plaintiffs further allege that BCBSM suffered damages in excess of $75,000 due to the unpaid guaranteed rebates for branded medical supplies. (*See, e.g., id.* at PageID.80 at ¶ 101.)

Express Scripts argues that plaintiffs' fraudulent inducement claim is barred by the merger and integration clause in the 2019 MSA. (ECF

No. 24-1, PageID.24-1 at § 18.24.) However, a merger clause does not automatically preclude a fraudulent inducement claim.

> The key question regarding contracts that contain a merger clause is whether one party justifiably relied on the representations of the other where the written agreement not only failed to include those representations, but clearly stated that by signing the contract the parties were agreeing that the written document made up their entire agreement. *See Star Ins. Co. v. United Commercial Ins. Agency, Inc.,* 392 F.Supp.2d 927, 929–30 (E.D. Mich. 2005) (holding that the counter-plaintiff insurance company could raise a fraudulent inducement claim despite the presence of a merger clause in the disputed contract). Moreover,

> > [t]here is an important distinction between **(a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract. It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation**. It stretches the [*UAW–GM Human Resource Center v. KSL Recreation Corp.,* 228 Mich. App. 486 (1998)] ruling too far to say that any pre-contractual factual misrepresentations made by a party to a contract are wiped away by simply including a merger clause in the final contract. *Id.* at 928–29.

*LIAC, Inc. v. Founders Ins. Co.*, 222 F. App'x 488, 493 (2007) (emphasis added); *accord Star Ins. Co.*, 392 F.Supp.2d at 929–30 (holding that the counter-plaintiff insurance company could raise a fraudulent-

inducement claim despite the presence of a merger clause in the disputed contract); *United Wholesale Mortg., LLC v. America's Moneyline, Inc.*, 647 F. Supp. 3d 587, 595–596 (E.D. Mich. 2022) (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) ("Parties are entitled to bring a fraud-in-the-inducement action when they are induced into entering into an agreement on the basis of false representations.")).

"Fraudulent inducement 'addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *United Wholesale Mortg.*, 647 F. Supp. 3d at 596 (quoting *Llewellyn-Jones*, 22 F. Supp. 3d at 778). Fraudulent inducement "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *See LIAC, Inc.*, 222 F. App'x at 492 (quoting *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App 636, 640 (1995)).

In addition to the allegations cited at the outset of this section, plaintiffs have alleged that, once the 2017 Amendment was executed, Express Scripts paid BCBSM guaranteed rebates for branded medical supplies under the 2015 MSA, and the 2017 Amendment contained

substantively identical relevant language to the 2019 MSA. (ECF No. 14, PageID.67 at ¶ 34.) Therefore, based on Express Scripts' affirmative representation made <u>at the request of BCBSM</u> prior to the execution of the 2019 MSA and the factual allegation that Express Scripts had been paying BCBSM guaranteed rebates for branded medical supplies for at least two years, the Court finds that plaintiffs have adequately and plausibly pleaded that Express Scripts made "representations of fact" to BCBSM "to induce [BCBSM] to enter into" the 2019 MSA with the understanding that BCBSM would be paid guaranteed rebates for branded medical supplies. *LIAC, Inc.*, 222 F. App'x at 493.

The Court is not persuaded by Express Scripts' argument that BCBSM's claim for fraudulent inducement must fail because Express Scripts' alleged statements made during contract negotiations were not incorporated into 2019 MSA. (*See* ECF No. 24, PageID.124 (citing *United Wholesale Mortg.*, 647 F. Supp. 3d at 594 ("Michigan law . . . establishes that when a written contract, with a [merger] clause, expressly contradicts [a party's] allegedly fraudulent representations not contained in the contract, a plaintiff's reliance on such representations cannot be reasonable."); *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493,

499–500 (6th Cir. 2014) ("fraud claims based on 'collateral agreements' not expressed in the contract" are precluded when there is a merger clause in the contract)).)

Both *United Wholesale Mortgage* and *Ram International* recognize that a merger clause does not automatically bar a fraudulent inducement claim. *United Wholesale Mortg.*, 647 F. Supp. 3d at 595–596; *Ram Int'l*, 555 F. App'x at 498. Moreover, nowhere in the 2019 MSA does the language "expressly contradict" plaintiffs' contention that Express Scripts would pay BCBSM guaranteed rebates for branded medical supplies. *United Wholesale Mortg.*, 647 F. Supp. 3d at 594.

For the foregoing reasons, the Court concludes that plaintiffs have pleaded a viable claim for fraudulent inducement and **DENIES** the motion to dismiss the Third Cause of Action.

## C. Promissory estoppel (Fourth Cause of Action)

Plaintiffs premise their claim of promissory estoppel[1] on: (1) Express Scripts' promise to BCBSM in August 2017, in writing before

---

[1] Promissory estoppel requires: (1) a promise, (2) that the promisor should reasonably have expected to induce action or forbearance on the part of the promisee, and (3) that in fact produced action or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. *See, e.g., State Bank of Standish v. Curry*,

17

entering the 2019 MSA, that Express Scripts would pay BCBSM the guaranteed minimum rebates on branded medical supplies; (2) the definition of "Brand Name Drugs" in the 2019 MSA being substantively identical to that set forth in the 2017 Amendment to the 2015 MSA; and (3) Express Scripts payment of guaranteed rebates for branded medical supplies to BCBSM under the 2015 MSA, once the 2017 Amendment was executed. (ECF No. 28, PageID.176.)

Even assuming plaintiffs have sufficiently pleaded a claim for promissory estoppel, the Court finds that Michigan law precludes any recovery because an express contract exists.

> **If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract**. *Shurlow Tile and Carpet Co. v. Farhat,* 60 Mich. App. 486, 491, 231 N.W.2d 384 (1975); *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 939 (6th Cir.1989). In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract. *Campbell v. Troy,* 42 Mich. App. 534, 537, 202 N.W.2d 547 (1972). **This is because promissory estoppel is an alternative theory of recovery where no contract exists; and, thus, it is a substitute for consideration**. *See Huhtala v. Travelers Insurance Co.,* 401 Mich. 118, 133, 257

_____

442 Mich. 76, 96 (1993); *Ypsilanti Cmty. Utilities Auth. v. MeadWestvaco Air Sys., LLC,* 2008 WL 2610273, at *4 (E.D. Mich. June 30, 2008).

N.W.2d 640 (1977) ("Promissory estoppel ... substitutes for consideration in a case where there are no mutual promises."); *State Bank of Standish v. Curry,* 190 Mich. App. 616, 620, 476 N.W.2d 635 (1991), *affirmed in part and reversed in part,* 442 Mich. 76, 500 N.W.2d 104 (1993).

**Here, the parties admit a contract exists but disagree on its scope, terms, and effect. Defendant is entitled to summary judgment on Count II**.

*Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491–92 (E.D. Mich. 1993), *aff'd,* 47 F.3d 1167 (6th Cir. 1995) (emphasis added). *Accord Bowman v. Dentsply Sirona, Inc.*, 2022 WL 18540561, at *4 (citing *Uselmann v. Pop*, 495 F. Supp. 3d 528, 540 (E.D. Mich. 2020) ("Rule 8(d)(3) permits Plaintiff to plead claims in the alternative . . . so long as the evidence of a contract remains in dispute.")

In this action, plaintiffs have alleged, and Express Scripts has admitted, that there is an express contract between the parties. (*See e.g.,* ECF No. 14, PageID.63 at ¶ 17 ("Express Scripts was BCBSM's PBM under a Pharmacy Benefit Manager Master Agreement with an effective date of January 1, 2019 (the '2019 MSA').")); ECF No. 24, PageID.115 ("Recognizing that there is an express contract between the parties, Express Scripts is not moving to dismiss BCBSM's breach of contract claims[.]").) Accordingly, the Court finds that plaintiffs' claim for

promissory estoppel fails as a matter of law and **GRANTS** the motion to dismiss as to the Fourth Cause of Action.

### D.   Equitable estoppel (Fifth Cause of Action)

Plaintiffs assert that a claim based on the doctrine of equitable estoppel should not be dismissed because equitable estoppel is available as an "'aid' in conjunction with BCBSM's other claims," not one upon which it seeks to recover damages exclusively. (ECF No. 28, PageID.179 (citing *Hewson v. Specialized Loan Servicing, LLC*, 2022 WL 2758521, at *2 (E.D. Mich. July 14, 2022) (quoting *Van v. Zahorik*, 227 Mich. App. 90, 102 (1997))).)

Plaintiffs' argument is misplaced, as it is contrary to the rule set forth in *Hewson* and a litany of other Michigan Court of Appeals cases, all of which hold:

> **Equitable estoppel is not an independent cause of action**, but rather a doctrine that may assist a party by preventing the opposing party from asserting or denying the existence of a particular fact. *See Hoye v. Westfield Ins. Co.*, 194 Mich.App. 696, 705–707, 487 N.W.2d 838 (1992), citing Prosser, Torts (4th ed.), § 105, pp. 691–692.

*W. Am. Ins. Co. v. Meridian Mut. Ins. Co.*, 230 Mich. App. 305, 309–10 (1998) (emphasis added); *see also Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 140–141 (1999) (citing *Meridian Mutual*) (same);

20

*Hewson*, 2022 WL 2758521, at *2 ("Equitable estoppel is an affirmative defense that cannot be pled as an independent cause of action.").

Accordingly, the Court **GRANTS** the motion to dismiss as to the Fifth Cause of Action.

## V.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Express Scripts' motion to dismiss (ECF No. 24) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiffs' First, Fourth, and Fifth Causes of Action are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' Second, Third, Sixth, and Seventh Causes of Action **REMAIN PENDING**.

**SO ORDERED.**

Date: March 31, 2024           **s/Jonathan J.C. Grey**
                                Hon. Jonathan J.C. Grey
                                United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2024.

<u>s/</u> **S. Osorio**
Sandra Osorio
Case Manager