UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD OF
MICHIGAN MUTUAL INSURANCE
COMPANY and BLUE CARE
NETWORK OF MICHIGAN,

    Plaintiffs,

v.

EXPRESS SCRIPTS, INC.,

    Defendant.
_____/

Case No. 2:23-cv-11213
District Judge Jonathan J.C. Grey
Magistrate Judge Kimberly G. Altman

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (ECF No. 33)[1]

I.    Introduction

This is a contract dispute. Plaintiffs Blue Cross Blue Shield of Michigan Mutual Insurance Company and Blue Care Network of Michigan (collectively, "BCBSM") are suing Express Scripts, Inc. ("Express Scripts") for its failure to pay guaranteed pharmaceutical rebates for brand name drugs under a 2019 agreement between the parties. (ECF No. 14).

---

[1] Upon review of the motion papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

Before the Court is BCBSM's motion to compel discovery, (ECF No. 33), which has been referred to the undersigned, (ECF No. 39). BCBSM seeks documents relating to Express Scripts' internal financial analyses, the materiality of rebates in pharmacy benefit manager (PBM) contracts, the usage of the term "drug," and the drafting and negotiation of key terms and conditions regarding rebates under the parties' prior 2015 agreement. (*Id.*). The motion is fully briefed, (ECF Nos. 37, 38), and ready for consideration.

For the reasons that follow, BCBSM's motion will be GRANTED IN PART and DENIED IN PART. Express Scripts shall produce (1) the internal financial analyses described in this order, and (2) responses to Requests for Production (RFPs) 3-5 from January 1, 2013 to July 31, 2016, under a set of search terms to be agreed upon by the parties.

II. Procedural History

BCBSM filed suit on May 23, 2023. (ECF No. 1). On June 14, 2023, BCBSM filed an amended complaint, (ECF No. 14), and on July 24, 2023, Express Scripts filed a partial motion to dismiss, (ECF No. 24). Express Scripts sought dismissal of counts one, three, four, and five of the amended complaint. (*Id.*). These counts asserted claims for conversion, fraudulent inducement, promissory estoppel, and equitable estoppel. (ECF No. 14). Express Scripts did not challenge the counts of the complaint related to breach of contract. (ECF No. 24).

2

On March 1, 2024, after Express Scripts' motion was fully briefed, but before it was ruled on, BCBSM filed this motion to compel. (ECF No. 33). Express Scripts filed a response on March 15, 2024, (ECF No. 37), and BCBSM filed a reply on March 22, 2024, (ECF No. 38).

Then, on March 31, 2024, the district court ruled on Express Scripts' motion to dismiss, granting it in part and denying it in part. (ECF No. 40). Specifically, the district court dismissed BCBSM's conversion, promissory estoppel, and equitable estoppel claims, but not their fraudulent inducement claim. (*Id.*). Thus, the case continues on BCBSM's breach of contract and fraudulent inducement claims.

The undersigned ordered the parties to meet and confer and submit a statement of resolved and unresolved issues, (ECF No. 41), which the parties submitted on April 23, 2024, (ECF No. 43). The parties were able to resolve two issues: BCBSM agreed not to seek additional search terms based on RFPs 35-38 (relating to the materiality of rebates in PBM contracts), and Express Scripts has withdrawn its objections to producing documents related to (1) the materiality of rebates in PBM contracts and (2) the use of the term "drug." (*Id.*, PageID.490-491). The parties continue to dispute whether Express Scripts should be required to produce (1) its internal financial analyses and (2) documents from January 1, 2013 to July 31, 2016, concerning the drafting and negotiation of key terms and

3

conditions regarding rebates under the 2015 agreement. (*Id.*, PageID.491-493).

### III. Legal Standard

The scope of discovery permits a party to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The scope, however, may be "limited by court order," *id.*, meaning it is within the sound discretion of the Court. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017) ("Further, a court has broad discretion over discovery matters . . . and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion." (internal citation omitted)). Moreover, discovery is more liberal than even the trial setting, as Rule 26(b) allows discovery of information that "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1).

If a party believes that another party is not complying with discovery requests, then it may file a motion to compel. Motions to compel are governed by Federal Rule of Civil Procedure 37(a)(3)(B), which states, "[a] party seeking

4

discovery may move for an order compelling an answer, designation, production, or inspection."

IV. Analysis

A. RFPs at Issue

BCBSM seeks the production of documents that fall under the following requests, which are reproduced below along with Express Scripts' responses as attached to BCBSM's motion.

Custodial Documents

**RFP 3:** All Documents and Communications relating to the negotiation and drafting of the 2015 [Pharmacy Benefit Manager Master Agreement ("MSA")] and each of its amendments. The relevant time period for this RFP is January 1, 2013, through January 1, 2018.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine. Express Scripts further objects to this Request as it is not relevant or proportional to the needs of the case because Plaintiffs' claims are limited to allegations regarding only the 2019 MSA. Documents relating to the negotiation of a different contract are not relevant, and the collection of all documents relating to a different contract is unduly burdensome.

**RFP 4:** All Documents and Communications relating to the negotiation and drafting of the 2015 MSA's definitions section and Schedule D. The relevant time period for this RFP is January 1, 2013, through January 1, 2018.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably

5

limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine. Express Scripts further objects to this Request as it is not relevant or proportional to the needs of the case because Plaintiffs' claims are limited to allegations regarding only the 2019 MSA. Documents relating to the negotiation of a different contract are not relevant, and the collection of all documents relating to a different contract is unduly burdensome.

**RFP 5:** Documents and Communications sufficient to show the negotiation of the key terms and conditions of the 2015 MSA, including but not limited to rebates. The relevant time period for this RFP is January 1, 2013, through January 1, 2018.

**RESPONSE:** Express Scripts objects to the Request to the extent it requests documents protected by the attorney-client privilege or attorney work-product doctrine. Express Scripts further objects to this Request as it is not relevant or proportional to the needs of the case because Plaintiffs' claims are limited to allegations regarding only the 2019 MSA. Documents relating to the negotiation of a different contract are not relevant, and the collection of all documents relating to a different contract is unduly burdensome.

(ECF No. 33-2, PageID.287-288).

<u>Financial Analyses</u>

**RFP 19:** All Documents and Communications relating to BCBSM's 2017 Request for Proposal, including Your response.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work product doctrine.

Further answering, Express Scripts will produce its response to the 2017 Request for Proposal and communications relating to and discussing the 2017 Request for Proposal and Express Scripts'

response.

**RFP 20:** All Documents and Communications relating any financial or other analysis that Express Scripts conducted relating to the 2017 Request for Proposal or the response by Express Scripts.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine. Express Scripts further objects to this Request that "any financial or other analysis" Express Scripts conducted in connection to the 2017 Request for Proposal is not relevant to the rebate guarantee calculation process, and, therefore, is not relevant to the claims and defenses at issue in this case. Express Scripts reserves further objections unless and until BCBSM explains the relevance of the information sought in this Request.

**RFP 24:** All Documents and Communications relating to BCBSM's 2020 Request for Proposal, including Your response.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine.

Further answering, Express Scripts will produce its response to the 2020 Request for Proposal and non-privileged communications relating to and discussing the 2020 Request for Proposal and Express Scripts' response.

**RFP 25:** All Documents and Communications relating to any financial or other analysis that Express Scripts conducted relating to the 2020 Request for Proposal or the response by Express Scripts.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product

doctrine. Express Scripts further objects to this Request that "any financial or other analysis" Express Scripts conducted in connection to the 2020 Request for Proposal is not relevant to the rebate guarantee calculation process, and, therefore, is not relevant to the claims and defenses at issue in this case. Express Scripts reserves further objections unless and until BCBSM explains the relevance of the information sought in this Request.

**RFP 31:** All Documents and Communications relating to any analysis of Your financial gains and/or losses resulting from the 2019 MSA.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" as overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine. Express Scripts further objects to this Request as not relevant to the claims or defenses at issue in the case and not proportional to the needs of the case, in that Express Scripts' financial gains and/or losses is not relevant to any element of any cause of actions alleged in this case.

**RFP 33:** All Documents and Communications relating to Your October 23, 2020 offer to BCBSM to modify the methodology for calculating guaranteed minimum rebates under the 2019 MSA for branded medical supplies as part of Your 2022-2024 renewal offer or in connection with the 2020 Request for Proposal.

**RESPONSE:** Express Scripts objects to the request for "all documents and communications" is overly broad, not reasonably limited in scope as to subject matter, and calling for documents protected by the attorney-client privilege and attorney work-product doctrine.

Further answering, Express Scripts will produce responsive non-privileged documents.

(*Id.*, PageID.294-299).

B.     Discussion

1.     The Dispute

At issue is whether the 2019 agreement for Express Scripts to provide actual and guaranteed rebates[2] for "Brand Name Drugs" applied to branded medical *supplies* as well as medications and other categories of covered products. (ECF No. 14, PageID.59-60). According to BCBSM, Express Scripts had been providing these rebates to BCBSM for medical supplies, but stopped in July 2020, saying that it had been mistakenly doing so as those products were not covered by the rebate provision of the agreement. (*Id.*). Express Scripts then offered to provide the rebates, both retroactively and going forward, *if* BCBSM would award Express Scripts a new contract pursuant to BCBSM's July 2020 request for proposal for its next PBM services contract. (*Id.*; *see also* ECF No. 33, PageID.257-261). BCBSM also alleges that an audit revealed other products that Express Scripts wrongfully withheld rebates for. (ECF No. 14, PageID.71-74).

Express Scripts admits that it had mistakenly offered rebates for non-drug supplies, but denies that its position on rebates was based on its financial outlook or to induce BCBSM to enter a new contract with it. (ECF No. 42, PageID.469-

---

[2] An "actual" rebate is one received by Express Scripts that it may pass along to BCBSM. A "guaranteed" rebate is one that Express Scripts would provide to BCBSM even if the actual rebate was less than the guaranteed amount. (ECF No. 33, PageID.258).

9

471).

As will be explained in detail below, BCBSM argues that the documents they seek are relevant to Express Scripts' understanding of the 2019 agreement, the meaning of the agreements' terms, and whether Express Scripts mistakenly provided rebates on branded medical supplies prior to July 2020.

2. Financial Analyses

The parties entered into the 2019 agreement based on Express Scripts' response to BCBSM's 2017 request for proposals. (ECF No. 33, PageID.264). BCBSM seeks Express Scripts' internal financial projections and related documents regarding their proposal because BCBSM believes it is relevant to Express Scripts' understanding of the agreement. (*Id.*). They argue that Express Scripts' projections will reflect the scope of products to which Express Scripts planned to provide rebates. The documents will, "among other things, enable BCBSM to test, challenge, and refute Express Scripts' position that it mistakenly paid rebates for branded medical supplies for years." (*Id.*, PageID.264).

For similar reasons, BCBSM also requests Express Scripts' financial analyses of gains or losses resulting from the 2019 agreement to test whether its decision to no longer provide rebates for certain products was based on correcting its mistake, or "a convenient way to improve its financial performance" under the agreement. (*Id.*, PageID.267). They also request Express Scripts' financial

projections during the 2020 bid process for a new contract, in order to determine why Express Scripts offered to reinstate rebates for certain products. (*Id.*, PageID.268).

Express Scripts notes that it complied partially with two of the six RFPs at issue, providing its response to BCBSM's requests for proposals and communications relating to the requests for proposals and Express Scripts' responses. (ECF No. 37, PageID.368-369). It argues that further production would be unreasonably cumulative or duplicative. (*Id.*, PageID.370 (citing Fed. R. Civ. P. 26(b)(2)(c))). Express Scripts' past performance of offering certain rebates, under the 2015 agreement and the 2019 agreement until July 2020, is not disputed. Express Scripts reasons, then, that the only reason for discovery of additional financial analyses would be to show motive or bad faith. But "in a commercial contract situation a breach is a breach. The breaching party's motive is not material." *No Limit Clothing, Inc. v. Allstate Ins. Co.*, No. 09-13574, 2011 WL 96869, at *5 (E.D. Mich. Jan. 12, 2011) (quoting *Red Cedars, Inc. v. Westchester Fire Ins. Co.*, 686 F. Supp. 614, 616 n.1 (E.D. Mich. 1988)).

BCBSM argues that while motive may be revealed by such documentation, their permissible purpose to obtain it is to show Express Scripts' understanding of and intent in entering the agreement.

"When a contract's language in unambiguous, the court must interpret and

11

enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 892 (E.D. Mich. 2020) (internal citations, quotation marks, and brackets omitted). But "[d]etermining the meaning of an ambiguous contract is a question of fact." *Id.* (citing *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 469 (2003)). "The law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation." *Klapp*, 468 Mich. at 470 (quoting *Penzien v. Dielectric Prods. Eng'g Co., Inc,* 374 Mich. 444, 449 (1965)).

Here, the district court ruled that BCBSM's claim for fraud in the inducement survives dismissal and was not asked to address BCBSM's breach of contract claims. In light of this, probative evidence outside of the four corners of the agreement is potentially relevant to its interpretation. And discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). However, the Court does not agree that all of the discovery sought is relevant to this permissible purpose for the reasons explained below.

Specifically, Express Scripts' financial projections when responding to BCBSM's 2017 proposal and prior to entering the 2019 agreement are discoverable. These documents could reflect whether Express Scripts had

12

accounted for the contested rebates in bidding for the contract and if it intended to provide those rebates. They would also, as BCBSM suggests, shed light on whether Express Scripts had been mistakenly honoring the rebates (suggesting it did not agree to them in the 2019 agreement), or were consciously breaching the agreement as BCBSM theorizes. (ECF No. 38, PageID.410). Therefore, these documents are ordered to be produced.

As for financial information regarding gains or losses resulting from the 2019 agreement and financial projections for the 2020 bid process for a new contract, these are not relevant and proportional to any permissible purpose and are thus not discoverable. This information post-dates Express Scripts' entry into the 2019 agreement with BCBSM and thus would shed little light on Express Scripts' intention or interpretation of the agreement at the time it was entered. Poor financial performance under the agreement would not necessarily reflect a bad faith or intentional breach; it would be equally likely for a company in such a position to simply re-examine its contracts to ensure it was not providing rebates that had not been agreed to. *See Bisig v. Time Warner Cable, Inc.*, No. 3:14-CV-36-H, 2015 WL 13950948, at *3 (W.D. Ky. Jan. 28, 2015) ("[Discovery may have] so little relevance that the potential harm resulting from production outweighs any presumption in favor of disclosure.") (citing *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-12 (D. Kan. 2002)).

Furthermore, as demonstrated by BCBSM's briefing, their strongest argument for the relevancy of the 2020 bid process documents is under their *conversion* claim. (ECF No. 33, PageID.268-269). BCBSM argues that the documents would be "highly probative to whether Express Scripts converted BCBSM's property for Express Scripts' 'own use' for purposes of BCBSM's conversion claim. (*Id.* (citing *Jackson v. Spencer*, No. 329233, 2016 WL 7493863, at *4 (Mich. Ct. App. Dec. 27, 2016))[3]. However, BCBSM's conversion claim has since been dismissed. In the parties' statement of resolved and unresolved issues, BCBSM says that this information is relevant to its breach of contracts claims as well. However, as explained above, the relevance of financial documents created after the parties entered the 2019 agreement is lacking, and their production is not proportionate to the needs of the case. As such, BCBSM's motion to compel production of financial analyses post-dating the 2019 agreement will be denied.

### 3. Custodial Documents

For the final unresolved issue between the parties, BCBSM seeks custodial documents related to the parties' understanding of their 2015 agreement, which BCBSM says is identical in relevant part to the 2019 agreement and therefore

---

[3] The undersigned acknowledges that under Michigan Court Rule 7.215(C)(1), "[a]n unpublished opinion [of the Michigan Court of Appeals] is not precedentially binding under the rule of stare decisis."

relevant to Express Scripts' understanding of the latter. (ECF No. 33, PageID.275). BCBSM says that under identical definitions from the 2015 agreement, Express Scripts provided rebates for the supplies now at issue. (*Id.*, PageID.275-277).[4] Therefore, their reasoning goes, the parties had a shared understanding that the rebate language of the 2019 agreement would cover such supplies.

    Express Scripts says it has already produced documents under RFPs 3-5 for the period of time from August 1, 2016 to May 23, 2023. (ECF No. 37, PageID.381). Additionally, it has produced some documents from before that period. (*Id.*). Express Scripts argues that requiring production of additional documents—from January 1, 2013 to July 31, 2016—would be irrelevant, unduly burdensome, and disproportionate to the case. Express Scripts says that this could require, as a low estimate, review of over 100,000 additional documents. (*Id.*). BCBSM, however, contends that these documents would be reviewed by Express Scripts either way based on what Express Scripts has already agree to review and produce under other requests that are not before the Court. (ECF No. 38, PageID.413). Additionally, BCBSM says that Express Scripts' document estimate is based on search terms that have since been narrowed by agreement of the

---

[4] The provision of *guaranteed* rebates was added in a 2017 amendment to the 2015 agreement. *See* ECF No. 14, PageID.67; ECF No. 33, PageID.276.

15

parties. (*Id.*).[5]

Assuming that the parties will be able to agree on a narrow set of search terms, there is no reason to preclude discovery of these relevant documents. The documents are relevant to Express Scripts' understanding of the terms of the 2019 agreement because under a substantively identical provision of the 2015 agreement, Express Scripts provided rebates for the type of supplies at issue. Whether Express Scripts understood that language to provide for brand name supply rebates is relevant to its understanding of similar language in the 2019 agreement between the parties. Therefore, Express Scripts is ordered to produce documents covered by RFPs 3-5 from January 1, 2013 to July 31, 2016, under a set of search terms to be agreed upon by the parties.

V. Conclusion

For the reasons stated above, BCBSM's motion to compel, (ECF No. 33), is GRANTED IN PART and DENIED IN PART. Express Scripts shall produce financial projections when responding to BCBSM's 2017 proposal and prior to entering the 2019 agreement. Express Scripts is *not* ordered to produce financial information regarding gains or losses resulting from the 2019 agreement and financial projections for the 2020 bid process for a new contract. Finally, Express

---

[5] Plaintiffs aver that the search terms for their RFPs are near agreement. (ECF No. 38, PageID.413).

Scripts shall produce responses to RFPs 3-5 from January 1, 2013 to July 31, 2016, under a set of search terms to be agreed upon by the parties.

SO ORDERED.

Dated: May 2, 2024  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 2, 2024.

s/Carolyn Ciesla  
CAROLYN CIESLA  
Case Manager